UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JERMAINE LOCKHART,

    Plaintiff,

v.                                           Case No. 23-cv-941-bhl

SGT. DEMETRIUS REYNOLDS,

    Defendant.

# SCREENING ORDER

Plaintiff Jermaine Lockhart, who is currently serving a state prison sentence at the Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Lockhart's motion for leave to proceed without prepayment of the filing fee, motion to appoint counsel, and to screen the complaint. Dkt. Nos. 1-2, & 4.

### MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

Lockhart requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Lockhart has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $13.74. Accordingly, the Court will grant the motion for leave to proceed without prepayment of the filing fee.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

At the relevant time, Lockhart was an inmate at the Waupun Correctional Institution, where Defendant Demetrius Reynolds was a sergeant. Dkt. No. 1, ¶¶4-5. Lockhart has severe chronic migraines, for which he has a prescription for Rizatriptan 10mg to be used upon request. *Id.*, ¶¶8-9, 38. On April 21, 2023, Lockhart woke up with a headache and asked Reynolds for his Rizatriptan and nasal spray. *Id.*, ¶¶6-7, 10. Reynolds responded that he would come back with the medications after he completed morning medication pass. *Id.*, ¶¶11-12. About an hour passed and Reynolds still had not brought either medication; he kept ignoring Lockhart's attempts to get his attention. *Id.*, ¶¶13-14. Out of desperation, Lockhart stated, "so if I say I am suicidal, I bet you would say something." *Id.*, ¶15. Reynolds responded, "ok you are suicidal," and got on the radio to report it. *Id.*, ¶16. Reynolds then stated that the request for Rizatriptan and nasal spray were cancelled. *Id.*, ¶17.

Lockhart later told Sgt. Demers (not a defendant) and Lt. Stone (not a defendant) that Reynolds refused to get him his medications even though he was in severe pain. *Id.*, ¶¶18-22. Lockhart was then handcuffed and taken to the Psychological Services Unit because he had stated he was suicidal. *Id.*, ¶¶23, 28. While Lockhart was waiting in the strip-cell, he again asked Lt. Stone and Lt. Gripentrog (not a defendant) for his medications. *Id.*, ¶24. Lt. Stone looked in the medication drawer and saw that Lockhart's medication and nasal spray were in the bag. *Id.*, ¶26. However, Reynolds had falsely reported that he had already given Lockhart his medications, so he could not get any more. *Id.*, ¶¶24, 31. Lockhart then asked Lt. Stone and Lt. Gripentrog to go check hallway camera footage, which would show he never received his medications. *Id.*, ¶25.

3

Lt. Gripentrog agreed and left. *Id.*, ¶27. Lockhart never got his medications that day and he suffered from nausea, loss of appetite, blurred vision, and a severe pounding headache for the rest of the day and night. *Id.*, ¶¶29-30.

Lt. Gripentrog later showed up at Lockhart's observation cell and told him that hallway camera footage confirmed that Reynolds never gave him his medications. *Id.*, ¶31. Shortly thereafter, Lockhart filed an inmate complaint against Reynolds in connection with the April 21, 2023 incident. *Id.*, ¶¶32-33. In response, Reynolds gave him a conduct report on May 2, 2023, accusing him of disrespect and disruptive conduct, including various false allegations of using racial slurs. *Id.*, ¶¶34-35. Lt. Stone and Lt. Gripentrog testified on Lockhart's behalf during his disciplinary hearing for the conduct report, and the conduct report was ultimately dismissed. *Id.*, ¶36. But at that point, Lockhart had already served 11 days in segregation. *Id.*, ¶37. For relief, Lockhart seeks monetary damages. *Id.* at 8.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

Lockhart asks to proceed on an Eighth Amendment deliberate indifference claim, along with a First Amendment retaliation claim, against Reynolds. Dkt. No. 1, ¶¶40-41. To state an Eighth Amendment deliberate indifference claim, Lockhart must allege that: (1) he had an objectively serious medical condition; and (2) the defendant was deliberately indifferent towards it. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). A medical condition does not need

4

to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Lockhart must allege that the defendant "actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Lockhart alleges that, on April 21, 2023, he told Reynolds that he was in severe pain and needed his medications, but Reynolds refused to assist him. Reynolds then lied to his colleagues, claiming that he did give Lockhart his medications, preventing other correctional officers from stepping in to provide the medications. Lockhart states that he experienced severe unnecessary pain as a result of Reynold's conduct. Based on these allegations, the Court can reasonably infer that Reynolds may have violated Lockhart's Eighth Amendment rights; therefore, Lockhart may proceed on an Eighth Amendment deliberate indifference claim against Reynolds in connection with the April 21, 2023 incident.

To state a First Amendment retaliation claim, Lockhart must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment protected activity in the future; and (3) the First Amendment protected activity was at least a motivating factor in the defendant's decision to take the retaliatory action. *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Lockhart's allegations meet this standard—he alleges that Reynolds gave him a conduct report on May 2, 2023 because he exercised his constitutional right to file an inmate grievance regarding the April 21, 2023 incident. Receiving a conduct report could deter First Amendment protected activity in the future. And Reynolds issued the conduct report *after* Lockhart filed an inmate complaint against him and *after* colleagues discovered that he had lied to them about giving Lockhart his medication. Based on these allegations, the Court can reasonably infer that Reynolds

may have violated Lockhart's First Amendment rights; therefore, Lockhart may also proceed on a First Amendment retaliation claim against Reynolds in connection with the May 2, 2023 conduct report.

## MOTION TO APPOINT COUNSEL

Lockhart also filed a motion to appoint counsel. Dkt. No. 4. He states that he is unable to afford counsel; the issues in the case are complex; he has limited access to the law library due to an on-going institution lockdown; and he has made efforts to obtain a lawyer to no avail. *Id.*, ¶¶1-4.

In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). In exercising its discretion, the Court must consider two things: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

To satisfy the first prong, the Court must determine that a plaintiff made a good faith effort to hire counsel on his own. *Pickett v. Chicago Transit Auth.*, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. To demonstrate he satisfied the first prong, Lockhart must

6

show he contacted at least three lawyers and provide the Court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." *Eagan*, 987 F.3d at 682. When considering the second prong, the Court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). The Court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490-491. The Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491. In situations where the plaintiff files his motion in the early stages of the case, the Court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." *Pickett,* 930 F.3d at 871.

For purposes of the current motion, the Court will assume that Lockhart has made reasonable attempts to recruit counsel on his own. Dkt. No. 4. But the Court will not recruit counsel at this time. The complaint has not yet been served on Defendant and Defendant has not yet answered. Until matters proceed, and a responsive pleading is filed, it is far too early in the case to determine whether the case is complex. Further, Lockhart's complaint was clear and coherent; and it described what happened to him and the relief he seeks. Therefore, it appears that

7

he is competent, at least at this juncture of the case, to represent himself. To the extent Lockhart complains that he is incarcerated and unable to afford counsel, these circumstances do not differentiate him from other prisoner plaintiffs. He is in the same situation as most, if not all, *pro se* litigants. This is precisely why "deciding whether to recruit counsel is a difficult decision." A plaintiff's incarceration and indigence are not enough to recruit counsel.

Further, all Lockhart must do right now is wait for Defendant to file a responsive pleading to the complaint. Once that happens, the Court will enter a scheduling order with more instructions on how to proceed with the case, including conducting discovery and filing/responding to dispositive motions. In the meantime, Lockhart should read the prisoner guide that the Court will send to him along with this screening order. That guide contains information on civil litigation in federal court and what to expect moving forward. At this time, the Court does not believe Lockhart requires the assistance of counsel to present his case. Therefore, it will deny his motion to appoint counsel without prejudice. Lockhart may refile this motion, if his circumstances later change.

## CONCLUSION

The Court finds that Lockhart may proceed against Reynolds on an Eighth Amendment deliberate indifference claim in connection with the April 21, 2023 incident as well as a First Amendment retaliation claim in connection with the May 2, 2023 conduct report.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Lockhart's motion to appoint counsel (Dkt. No. 4) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of the complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Reynolds.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Reynolds shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the **$336.26** balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Lockhart is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution,

and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Lockhart is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Lockhart may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin on September 19, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge