UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JERMAINE LOCKHART,

           Plaintiff,

      v.                                    Case No. 23-cv-941-bhl

DEMETRIUS REYNOLDS,

           Defendant.

---

## DECISION AND ORDER

---

      Plaintiff Jermaine Lockhart, who is representing himself, is proceeding on an Eighth Amendment deliberate indifference claim in connection with allegations that Defendant Demetrius Reynolds denied him Rizatriptan and a nasal spray for his migraine on April 21, 2023. Dkt. Nos. 1 & 8. On June 28, 2024, Defendant filed a motion for summary judgment. Dkt. No. 42. Two months later, on August 19, 2024, Lockhart filed a motion for sanctions. Dkt. No. 56. Because the undisputed facts show that Defendant delayed Lockhart's migraine medication by two hours at most, there is no evidence of additional harm, and all further delays were caused by Lockhart's own fabricated reports of being suicidal, the Court will grant the motion for summary judgment and dismiss this case. The Court will also deny the motion for sanctions.

## FACTS

      At the relevant time, Lockhart was an inmate at the Waupun Correctional Institution, where CO Reynolds occasionally took shifts to assist with staffing shortages. Dkt. No. 44, ¶¶1-2. Because CO Reynolds normally worked at a different institution, he was not familiar with the

nuances of Lockhart's medical needs or his mental health history, *id*., ¶6, but the pair had interacted a few times in the past, *see* Dkt. No. 51, ¶8.

On April 21, 2023, CO Reynolds conducted morning medication pass on Lockhart's unit. Dkt. No. 44, ¶7. CO Reynolds pushed around a medication cart containing prepackaged medications for each inmate. *Id*., ¶¶8 & 10. CO Reynolds' procedure was to stop at an inmate's door; scan the prepackaged medications to record the medications the inmate received; provide the inmate with the prepackaged medications; then move to the next cell. *Id*., ¶¶8-9. At around 6:40 a.m., CO Reynolds went to Lockhart's cell and provided the following prepackaged medications: Salsalate (a pain medication), Cetirizine (an allergy medication), Ciclesonide (an inhalation aerosol used to prevent asthma attacks), and Albuterol (an aerosol inhaler). *Id*., ¶¶11 & 12. CO Reynolds gave Lockhart all of the medications that were on the medication chart and he did not withhold any medications. *Id*., ¶¶13-14, & 20. According to CO Reynolds, Lockhart took all of his medications at that time without any issues, requests, or complaints. *Id*., ¶¶15-16. According to Lockhart, he asked for two other medications, Rizatriptan and a nasal spray, because he felt an "on coming migraine headache" and CO Reynolds allegedly responded that he would retrieve it after completing medication pass. Dkt. No. 1, ¶¶6-7 & 10-12.

About two hours later, around 8:30 a.m., CO Reynolds was cleaning a cell when he heard Lockhart yell, "Bring me my medication!" *Id*., ¶22. According to CO Reynolds, Lockhart did not specify which medication he wanted or provide any other context about his request for "medication." *Id*., ¶23. CO Reynolds states that he was not aware that Lockhart had prescriptions for Rizatriptan and/or a nasal spray (which he could use "upon request"); and those medications were not on the medication cart for immediate use anyway. Dkt. No. 44, ¶¶19-20. Lockhart would have had to contact the health services unit to retrieve the medication. *Id*., ¶17. But before CO

Reynolds could do anything else, Lockhart yelled, "so if I say I am suicidal, I bet you would say something." Dkt. No. 1, ¶¶15-16. CO Reynolds explains that he was not familiar with Lockhart's mental health history; and DOC policy required him to report an inmate's threat of self-harm to a Sergeant right away, so he did. Dkt. No. 44, ¶25. Corrections staff then began the process to move Lockhart to an observation cell in the Restrictive Housing Unit (RHU). Dkt. No. 44, ¶26. CO Reynolds had no further involvement in the case after he called the Sergeant because Lockhart was moved to a different unit. *Id.*, ¶¶26-30.

At around 9:08 a.m., Lockhart arrived in his observation cell in RHU and told staff on that unit that CO Reynolds had refused to give him his Rizatriptan and nasal spray earlier in the day. *Id.*; *see also* Dkt. No. 1, ¶¶18-24. Lt. Stone (not a defendant) looked in Lockhart's medication bag and saw that the Rizatriptan and nasal spray were there and available for use. Dkt. No. 1, ¶26. Lt. Gripentrog said that he would check hallway camera footage to confirm that Lockhart had not already used the medications earlier in the day. *Id.*, ¶25. A short time later, Lt. Gripentrog (not a defendant) went back to Lockhart's observation cell and told him he had confirmed via hallway camera footage that CO Reynolds never gave him those medications. *Id.*, ¶31. It's unclear whether Lt. Stone and Lt. Gripentrog then allowed him to use his medication.

According to Lockhart's mental health assessment conducted later that day, Lockhart admitted that he said he was suicidal earlier in the day because staff were "irritating him." Dkt. No. 49-1 at 9. Lockhart's progress notes state, "upon clarification, Mr. Lockhart admitted that he had enforced suicidal ideation in order to have his issues with his medications addressed." *Id*. Lockhart reported to the nurse, "I had no [suicidal] thoughts then" and he "indicated again that he had expressed suicidal ideation to get his medications." *Id*. When asked if Lockhart felt safe in his observation cell, he responded, "I'm always safe." *Id*.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party asserting that a fact is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

CO Reynolds argues that he is entitled to summary judgment because he caused, at most, a two-hour delay in Lockhart receiving medication; and there is no verifying medical evidence that the delay caused any additional harm separate from the underlying medical condition. Dkt. No. 43. Lockhart, on the other hand, believes that there are disputes of fact that require trial. Dkt. No. 49.

To survive summary judgment on an Eighth Amendment deliberate indifference claim, Plaintiff must provide evidence from which a reasonable jury could conclude that: (1) he faced an objectively serious medical condition; and (2) the defendant subjectively knew about the medical condition and disregarded it. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (citing *Arnett v. Webster*, 658 F.3d 742, 750, 751 (7th Cir. 2011)). The first, objective, element is satisfied by showing that Plaintiff suffered from a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citing *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008)). The second, subjective, element is satisfied by showing that a prison official "knows of a substantial risk of harm to an inmate and 'either acts or fails to act in disregard of that risk.'" *Gomez*, 680 F.3d at 865 (quoting *Arnett*, 658 F.3d at 750).

In the context of "delayed" medical care, "some injury" separate from the underlying medical condition is required. *Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020); *see Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed."). A mere delay in obtaining care for a prisoner does not rise to the level of a constitutional violation if the delay was not material because it did not result in any harm to the plaintiff. *See id*. Prisoner plaintiffs asserting such claims must come forward with some evidence that the delay caused some degree of additional harm. *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013). "[N]on-expert evidence is sufficient as long as it permits the fact-finder to determine whether the delay caused additional harm." *Jackson v. Sheriff of Winnebago Cnty., Illinois*, 74 F.4th 496, 500–01 (7th Cir. 2023) (quoting *Ortiz v. City of Chicago*, 656 F.3d 523, 535 (7th Cir. 2011)).

Contrary to Lockhart's assertion, the relevant facts are not at dispute. Indeed, both parties agree that CO Reynolds did not give Lockhart his Rizatriptan and nasal spray for his "on coming migraine" during the two-hour period he was involved in this case, between 6:40 a.m. and 8:30 a.m., on April 21, 2023. And even accepting Lockhart's statement that he affirmatively asked CO Reynolds for these medications at around 6:40 a.m. and yet CO Reynolds did not immediately comply with his requests, those circumstances do not amount to a constitutional violation. As a preliminary matter, waiting a few hours for medical care, even when an inmate has a fractured hand or broken bones, does not violate the constitution. *Langston*, 100 F.3d at 1240 ("We have held in the past that a two-hour delay is not an unreasonably long wait for an x-ray, an examination, and possibly a set of a fracture. In fact, the public often waits longer at hospital emergency rooms."). Lockhart's complaint of an oncoming migraine may have been very painful, but it was not more severe than a fractured hand or broken bones, and was not the type of medical condition that required CO Reynolds to immediately drop what he was doing and tend to Lockhart's medical demands.

In addition, Lockhart has presented no verifying medical evidence showing that the delay caused any *additional* harm separate from the pain caused by the migraine itself. No medical records or other evidence show or even suggest any detrimental effect from the brief delay. Indeed, there are no records showing that Lockhart even requested to see medical staff that day (or in the following days) for his purportedly unbearable migraines.

The record also confirms that any delays Lockhart experienced in receiving his medication *after* 8:30 a.m. were caused by his own manipulative conduct. It is undisputed that he admitted he had fabricated reports of being suicidal, triggering observation protocols that took precedent over complaints about his oncoming migraine. Once Lockhart reported self-harm, CO Reynolds was

6

required to tend to that more pressing issue, which he did by contacting the Sergeant and starting observation protocols. Had Lockhart *not* fabricated suicidal ideation he likely would have received his medication sooner because it would have allowed CO Reynolds to actually investigate what medications he was yelling about. The record also confirms that CO Reynolds did not usually work at the institution and did not immediately know what "medications" Lockhart was demanding. Thus, Lockhart's own manipulative conduct aimed at getting staff attention immediately delayed any further investigation of the real, but less serious, medical condition he actually had. Based on this record, no reasonable jury could find that CO Reynolds was deliberately indifferent.

In response, Lockhart suggests that there is a dispute of fact over whether he actually received his Rizatriptan and a nasal spray later that day in RHU. Lockhart implies that after Lt. Gripentrog "confirmed" via hallway camera footage that CO Reynolds never gave him his medications, the Lieutenant improperly failed to provide the medications. *See* Dkt. Nos. 49-52. This argument is irrelevant to Lockhart's deliberate indifference claims against CO Reynolds. CO Reynolds is not responsible for what Lt. Gripentrog did or did not do once Lockhart was in RHU. *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009). While CO Reynolds was involved in the case, his immediate priority was to address Lockhart's threat of self-harm and move him to observation status, which he undisputedly did. Once Lockhart was moved to observation status on a different unit, CO Reynolds' responsibilities ended. The Court will therefore grant CO Reynolds' motion for summary judgment and dismiss the case.

## MOTION FOR SANCTIONS

On August 19, 2024, Lockhart filed a motion for sanctions based on CO Reynolds "falsely and knowingly lying" about Lt. Gripentrog giving him his medication in RHU. Dkt. No. 56.

7

Lockhart states that CO Reynolds has no way of knowing whether or not that is true because he was not in RHU at the time; and CO Reynolds has not attached any "evidence" to prove that fact. *Id*. First, Lockhart's own sworn complaint appears to allege that Lt. Gripentrog gave him his medication when he "confirmed" via hallway footage that he had not yet received it. *See* Dkt. No. 1, ¶¶31-32 ("Lt. Gripentrog echoed the same statement he made to me in ICE inmate complaint that CO Reynolds did not give me my medications as he claimed *and he address[ed] [] the situation.*") (emphasis added.) CO Reynolds was entitled to assume that the facts alleged in the sworn complaint were true; and he also accurately stated in his briefing materials that he "presumed" Lockhart received his medication from Lt. Gripentrog. *See* Dkt. No. 43 at 9 ("Presumably, Lockhart then received his medications.'). CO Reynolds did not lie or fabricate anything in his briefing materials; and he unambiguously identified the facts he presumed. Second, and as noted in the section above, CO Reynolds did not need to "prove" whether or not Lt. Gripentrog gave him his medication to prevail on his case. That fact is not relevant to CO Reynolds' defense because he was not personally involved once Lockhart moved to a different unit. Whether or not staff in RHU gave him his medication was not CO Reynolds' responsibility. Because Lockhart has not established any basis for imposing sanctions, the Court will deny the motion.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (Dkt. No. 42) is **GRANTED**; and this case is **DISMISSED**. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that Lockhart's motion for sanctions (Dkt. No. 56) is **DENIED**.

Dated at Milwaukee, Wisconsin on November 19, 2024.

                                                           s/ *Brett H. Ludwig*
                                                           BRETT H. LUDWIG
                                                           United States District Judge